1  JOHN H. DONBOLI (SBN: 205218)
   jdonboli@delmarlawgroup.com
2  JL SEAN SLATTERY (SBN: 210965)
   sslattery@delmarlawgroup.com
3  DEL MAR LAW GROUP, LLP
   322 8th Street, Suite 101
4  Del Mar, CA  92014
   Telephone: (858) 793-6244
5  Facsimile: (858) 793-6005

6  Attorneys for Plaintiff:  DONNA R. NELSON, an individual and on behalf
   of all others similarly situated
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 | DONNA R. NELSON, an individual and on      )  CASE NO: 3:07-cv-02367-LAB-RBB
   | behalf of all others similarly situated    )
11 |                                            )  **CLASS ACTION**
   |                          Plaintiff,        )
12 |                                            )  **PLAINTIFF'S <u>REPLY</u> TO**
   |                   vs.                      )  **DEFENDANT'S OPPOSITION TO**
13 |                                            )  **PLAINTIFF'S MOTION TO REMAND**
   | BIC USA, Inc., a Delaware Corporation, and )  **FOR LACK OF SUBJECT MATTER**
14 | DOES 1 through 100, inclusive,             )  **JURISDICTION**
   |                                            )
15 |                          Defendants.       )  **[28 U.S.C. § 1447]**
   |                                            )
16 |                                            )  Date:        March 3, 2008
   |                                            )  Time:        10:30 a.m.
17 |                                            )  District Judge: Judge Larry Alan Burns
   |                                            )  Room/Floor:   Room 9 / 2nd Floor
18 |                                            )
   |                                            )  **[ORAL ARGUMENT REQUESTED]**
19 |                                            )
   |                                            )
20 |                                            )
   |                                            )
21 |_____)

22        Plaintiff DONNA R. NELSON ("Plaintiff") hereby submits this Reply brief in support of

23 Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction.

24 **I.    <u>INTRODUCTION</u>**

25        Notwithstanding defendant BIC USA, INC.'s ("Defendant" or "BIC") personalized

26 attacks ("[t]his is a series of cases filed by the same law firm against companies that have

27 allegedly violated California Business and Professions Code section 17533.7") or attempts to

28 create new law by misinterpreting the holding of *In re Ford Motor Co./Citibank (South Dakota),*

1    *N.A.*, 264 F.3d 952, 958 (9th Cir. 2001),  it is abundantly clear in the Ninth Circuit that a plaintiff

2    is the master of her complaint and may plead that the damages at issue are less than that required

3    for diversity jurisdiction in federal court in order to avoid federal jurisdiction.  *Lowdermilk v.*

4    *U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007).

5         Defendant's mistaken understanding of Ninth Circuit law in this regard forms the basis of

6    its erroneous position set forth in the Opposition to Plaintiff's Motion to Remand For Lack of

7    Subject Matter Jurisdiction ("Opposition").  The crux of Defendant's position is that the amount

8    in controversy undoubtedly exceeds $5,000,000 because Defendant says it does.  This assertion

9    is made notwithstanding Plaintiff specifically pleading that "[u]nder no scenario, is the total

10   amount of damages that Plaintiff seeks in this action in excess of $4,999,000."  Complaint, ¶ 24.

11   The phrase "under no scenario" is unambiguous and falls squarely within the holding of

12   *Lowdermilk* wherein a plaintiff is permitted to plead less than $5,000,000 in damages to avoid

13   federal jurisdiction.[1]  *Id.* at 998-99.

14        Specifically, Defendant's contentions are incorrect in several regards:

15   (1)  First, any removal analysis must be conducted in light of the Ninth Circuit Court of

16        Appeals' holding in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir.

17        2007) that Plaintiffs are the master of their complaint and may plead that the

18        damages at issue are less than that required for diversity jurisdiction in federal court

19        in order to avoid federal jurisdiction.  *Id.* at 998-99.  Where a plaintiff does so, the

20        court "need not look beyond the four corners of the complaint to determine whether

21        the CAFA jurisdictional amount is met."  *Id.* at 998.  Furthermore, where "there is no

22        evidence of bad faith, the defendant must not only contradict the plaintiff's own

23        assessment of damages, but must overcome the presumption against federal

24        jurisdiction" and show with a "legal certainty" that the amount in controversy

25        exceeds $5 million.  *Id.* at 999.  Although not insurmountable, the legal certainty

---

[1]    Plaintiff's claim that the amount in controversy does not exceed the requisite jurisdictional limit (i.e., "[u]nder no scenario, is the total amount of damages that Plaintiff seeks in this action in excess of $4,999,000")holds true for both equitable and legal claims for relief. Defendant attempts to argue the opposite throughout the Opposition and is incorrect in this regard.

1    standard sets a high bar for Defendants.  *Id.* at 1000.

2    (2)  Second, the measure of restitution is not defined by Defendant's overall revenues or

3         gross profits.  In fact, the Complaint never requests restitution to Class Members of

4         Defendant's overall revenues or gross profits relating to Defendant's sale of

5         disposable lighters.  Rather, the Complaint prays for damages according to proof as

6         per the seminal case of *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th

7         663 (2006).  (Complaint, Prayer for Relief ¶ 1 at page 14).  Moreover, Plaintiff's

8         references to restitution arise within the context of Plaintiff's second and third cause

9         of action for violations of California Business & Prof. Code §§ 17200 *et seq.* and

10        17533.7 (collectively "UCL") (Complaint, ¶ 46, 53, Prayer for Relief, ¶ 5).  As fully

11        set forth below, private litigants have no independent cause of action for damages

12        under California's unfair competition statutes and Defendant's conclusory and

13        irrelevant sales figures cannot establish to a legal certainty that the amount in

14        controversy exceeds $5,000,000.

15    (3)  Third, Defendant claims that the costs in complying with an injunction "would be

16         expensive," the "cost of the injunction to BIC would be extraordinary," and that

17         Defendant is permitted to aggregate its costs of compliance in this class action case.

18         (Opposition, page 9, lines 7-8, 24).  Defendant is incorrect as to the pertinent legal

19         standard because contrary to Ninth Circuit case law does <u>not</u> permit for the

20         aggregation of compliance costs in class action cases.  *See In re Ford Motor*

21         *Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001).

22    Defendant failed to satisfy to a legal certainty that federal subject matter jurisdiction

23   exists in this case.  In particular, Defendant failed to establish that the amount in controversy

24   exceeds $5,000,000 exclusive of interests and costs.  As fully set forth below, Plaintiff

25   respectfully submits that federal jurisdiction does not exist in this matter and that this case

26   should be remanded to state court.

27   **II.    DEFENDANT FAILED TO PROVE THAT DAMAGES EXCEED $5 MILLION**

28    Federal courts are courts of limited jurisdiction and have "original jurisdiction" only

1  where there is diversity of citizenship, the action is between citizens of different states, and the

2  amount in controversy exceeds $5,000,000 dollars, exclusive of fees and costs.  28 U.S.C.

3  § 1332(d).   In cases such as this case, in which plaintiff's state court complaint specifies a

4  particular amount of damages (i.e., damages do not exceed $4,999,000), the defendant bears the

5  burden of proving to a "legal certainty" that the amount in controversy requirement is met and

6  that removal is proper.  *Lowdermilk*, 479 F.3d at 998; *Sanchez v. Monumental Life Ins. Co.,* 102

7  F.3d 398, 404 (9th Cir. 1996).  The underlying rationale was set forth in *Lowdermilk* as follows:

8

9          By adopting "legal certainty" as the standard of proof, we guard the
          presumption against federal jurisdiction and preserve the plaintiff's

10         prerogative, subject to the good faith requirement, to forgo a potentially
          larger recovery to remain in state court.  *See St. Paul Mercury*, 303

11         U.S. at 288-90.  Such a standard also maintains symmetry in our rules
          requiring legal certainty as the standard of proof; for instance, we

12         already require that a defendant seeking remand for a case initially filed
          in federal court must show with "legal certainty" that the claim is

13         actually for less than the jurisdictional minimum.  *Sanchez v.*
          *Monumental Life Ins. Co.*, 102 F.3d 398, 401-02 (9th Cir. 1996).

14

15 *Id.*

16         The burden of establishing removal jurisdiction is on the proponent of federal

17 jurisdiction. *Lowdermilk*, 479 F.3d at 997; *see Serrano v. 180 Connect, Inc., et al.*, 478 F.3d 1018

18 (9th Cir. 2007).  As Defendant is the proponent of federal jurisdiction in this case, it has the

19 burden of establishing jurisdiction, which it failed to meet.

20     A.     **The Standard for Calculating Statutory Damages**

21         In determining the amount in controversy in a removal action, the Court does not

22 consider claims for statutory damages which cannot be recovered under the facts alleged in the

23 complaint.  *See Sanchez*, 102 F.3d 398 at 404-05 [despite plaintiff's request for treble punitive

24 damages pursuant to Cal. Civil Code § 3345 in the complaint, Section 3345 did not allow for

25 trebling of contract damages as sought by plaintiff; therefore, defendant failed to meet its burden

26 of showing the amount-in-controversy requirement was met].  The Complaint states that

27 "[p]ursuant to Business & Professions Code Section 17204…restitution to compensate, and to

28 restore all persons in interest, including all Class members, with all monies acquired by means of

Defendant's unfair competition to the extent permitted by California."  (Complaint, Prayer for

-4-

1    Relief ¶ 5 at page 15).  As a matter of law, Plaintiff did not and does <u>not</u> seek Defendant's

2    overall revenues or gross profits from the sale of its disposable lighters because it is not the

3    proper measure of damages in this case.

4          **B.**    **<u>The Measurement of Restitution to Class Members Is Not Defendant's</u>**

5          **<u>"Overall Revenues" or "Gross Profits."</u>**

6          Plaintiff's references to restitution arise within the context of Plaintiff's UCL causes of

7    action.  Private litigants have no independent cause of action for damages under the unfair

8    competition statutes.  *Mai Systems Corporation v. UIPS* (N.D. Cal. 1994) 856 F.Supp. 538, 541.

9    "Instead, their remedies are strictly limited to injunctive relief and restitution, which may include

10   disgorgement of illicit profits to injured parties."  *Id*. (citing *E.W. French & Sons, Inc. v. General*

11   *Portland Inc.,*885 F.2d 1392, 1401 (9th Cir.1989)).  Accordingly, Plaintiff's claim for restitution

12   must be analyzed within the context of a UCL claim, which as a matter of law only relates to the

13   equitable claim of restitution.  See California Business & Prof. Code § 17203.

14         The award of restitution is discretionary.  Section 17203 enables the Court to "make such

15   orders or judgments…as may be necessary to prevent the use or employment by any person of

16   any practice which constitutes unfair competition…or as may be necessary to restore to any

17   person in interest any money or property, real or personal, which may have been acquired by

18   means of such unfair competition."

19         The California Supreme Court set forth in *Korea Supply Co. v. Lockheed Martin Corp.*,

20   29 Cal.4th 1134 (2003), that under California's UCL, an individual may recover profits or

21   money in which the individual has a vested interest.  *Id*. at 1148-49.  Vested interest is defined

22   by Black's Law Dictionary as being "unconditional," "absolute," and "not contingent."  Plaintiff

23   and Class Members do not have an unconditional or absolute interest to all of Defendant's

24   overall retail sales because the award of restitution pursuant to a UCL claim is "contingent" as it

25   is based on the Court's discretion.  See California Business & Prof. Code § 17203.  It is also not

26   "absolute" in that the Court must determine what percentage, if any, of the retail sales figures are

27   due to the unfair business practice.  Furthermore, in determining the amount in controversy

28   requirement, the Court should analyze the amount in controversy in light of the seminal case of

1  *Colgan v. Leatherman Tool Group, Inc.*  (See discussion *infra*).

2  **C.      The Seminal Case of *Colgan v. Leatherman Tool Group, Inc.* Sets The**

3          **Appropriate Measure of Damages In This Case**

4          Defendant misconstrues the relevant CAFA analysis because Plaintiff's prayer for

5  restitution is not analyzed pursuant to a theoretical damages award that is unsupported by

6  California law.  The measure of statutory damages in this case, as set forth in *Colgan v.*

7  *Leatherman Tool Group, Inc.*, is not measured by Defendant's overall revenues or gross sales

8  figures relating to the sales of its disposable lighters in California or even by 25% of its "gross

9  profit."  *Id.* at 700 [Although the *Leatherman* case was remanded on appeal based on the absence

10 of evidence to support the amount of restitution awarded, the trial court rejected as "'inequitable'

11 a percentage of Leatherman's gross profits as an appropriate measure of either the unlawful

12 benefit to Leatherman or the amount necessary to restore consumers to the position in which they

13 would have been but for the unlawful conduct."].  (Complaint, Prayer for Damages at ¶ 1).

14         Accordingly, the measure of damages in this case is substantially less than Defendant's

15 "overall revenues" or "gross profits."  Any evidence cited by Defendant to date is irrelevant and

16 not dispositive of the amount in controversy issue.  The Complaint does not allege damages in

17 excess of $5,000,000 dollars and Defendant fails to establish to a "legal certainty" that damages

18 exceed $5,000,000 dollars.

19 **D.      The CAFA Analysis Should Be Conducted Within the Four-Corners of the**

20         **Complaint**

21         In cases such as this, in which a plaintiff pleads an amount in controversy of less than

22 $5,000,000, the court "need not look beyond the four corners of the complaint to determine

23 whether the CAFA jurisdictional amount is met."  *Lowdermilk*, 479 F.3d at 998.

24 Notwithstanding the afore-mentioned case law, Defendant submitted a conclusory declaration

25 from Mr. Steve Milkey, which Plaintiff properly objected to as irrelevant, lacking foundation,

26 and violative of the best evidence rule to the extent Mr. Milkey's declaration is based on his

27 review of business records, in an attempt to satisfy the "high bar" of proving that the amount in

28 controversy in this matter exceeds $5,000,000.  Defendant falls short of its requirement in this

1    regard because a plain reading of the Complaint indicates that the amount in controversy does

2    not exceed $4,999,000.

3          It is facially apparent in reviewing the Complaint that the amount in controversy does <u>not</u>

4    exceed $5,000,000.  As such, there is no need for any additional factual inquiries by way of

5    supplemental declarations in this matter.

6          **E.    <u>Defendant Is Not Permitted to Aggregate its Costs of Compliance Should an</u>**

7                   **<u>Injunction Be Granted</u>**

8          28 U.S.C. § 1332 provides that "[i]n any class action, the claims of the individual class

9    members shall be aggregated to determine whether the matter in controversy exceeds the sum or

10   value of $5,000,000, **exclusive of interest and costs**."  Id. (emphasis added).  Notwithstanding

11   the prohibition on including its costs in the relevant CAFA analysis, Defendant claims that the

12   costs associated with compliance with an injunction carries this case over the jurisdictional

13   amount threshold under the so-called "either viewpoint" rule, which Defendant initially analyzes

14   pursuant to *In re Ford Motor Co./Citibank (South Dakota), N.A.* ("*In Re Ford*"), 264 F.3d 952,

15   958 (9th Cir. 2001). [2]

16         Defendant, however, completely misinterprets the application of *In re Ford* to this case

17   by claiming that this Court should disregard the well established cannon of legal authority

18   established pursuant to *In re Ford* and its progeny of cases and instead rely upon *Berry v.*

19   *American Express Pub. Corp.*, 381 F.Supp.2d 1118 (C.D. Cal 2005).  As an initial matter, the

20   *Berry* decision is no longer good law as it has been overruled, distinguished, and repeatedly

21   _____

22   [2]      The court in *In re Ford* rejected an argument similar to that being presented by
     Defendant.  The defendant in *In re Ford* claimed that the administrative costs of reinstating and

23   maintaining the rebate program "would be the same whether it is done for one plaintiff or for six
     million."  *Id.* at 960.  The court reasoned that if "this argument were accepted, and the

24   administrative costs of complying with an injunction were permitted to count as the amount in
     controversy, 'then every case, however trivial, against a large company would cross the

25   threshold.'"  Id. at 961 (citing *In re Brand Name Prescription Drugs Antitrust Litig*. 123 F.3d
     599, 609 (7th Cir. 1997).  As in *In re Ford Motor Co./Citibank (South Dakota), N.A.*, the

26   aggregation of claims is not permitted in cases such as this that do not involve "a single
     indivisible res, such as an estate, a piece of property (the classic example), or an insurance

27   policy."  These are matters that cannot be adjudicated without implicating the rights of
     everyone involved with the res.'" *Id.* at 959.

28

1   noted for not being the most well reasoned decision in the history of California jurisprudence.

2       Specifically, the following courts have disagreed with the reasoning of *Berry*, including

3   *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676 (9th Cir. 2006):

4       1)   *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir.(Ill.) Oct 20, 2005);

5       2)   *Ongstad v. Piper Jaffray & Co.*, 407 F.Supp.2d 1085 (D.N.D. Jan 04, 2006); and

6       3)   *Rodgers v. Central Locating Service, Ltd.*, 412 F.Supp.2d 1171, 11 Wage & Hour

7            Cas.2d (BNA) 1791 (W.D.Wash. Feb 01, 2006).[3]

8       Furthermore, the reasoning set forth in the *Berry* decision was declined to be followed in

9   the following two cases:

10      1)   *Werner v. KPMG LLP*, 415 F.Supp.2d 688 (S.D.Tex. Feb 07, 2006), and

11      2)   *Toller v. Sagamore Ins. Co.*, 514 F.Supp.2d 1111 (E.D.Ark. Sep 26, 2007).

12      Finally, this **abrogation** was recognized by the following courts:

13      1)   *Moniz v. Bayer A.G.*, 447 F.Supp.2d 31 (D.Mass. Aug 14, 2006);

14      2)   *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 67 Fed.R.Serv.3d 1083, 20 Fla. L.

15           Weekly Fed. C 517 (11th Cir.(Ala.) Apr 11, 2007); and

16      3)   *Cleveland v. Ark-La-Tex Financial Services, LLC*, 2007 WL 2460753 (S.D.Ala.

17           Aug 24, 2007).

18       Simply stated, the overwhelming body of judicial opinion, in the Ninth Circuit and

19   throughout the country, disavows the reasoning of *Berry*.  That being said, Defendant heavily

20   relies upon the *Berry* decision in an attempt to create new law in support of the proposition that

21   defendants, including Defendant herein, can now aggregate their costs of compliance in class

22   action cases.  This assertion is incorrect and misinterprets relevant Ninth Circuit case law in this

23

---

[3]      The court in *Rogers* determined that the analysis in *Berry* was misguided.  The Court
24   stated that it "respectfully disagrees with the method of statutory interpretation employed by
     [Berry]. Courts are certainly entitled to rely on legislative history *after* a statute is deemed
25   ambiguous on its face. [citation removed].  But the courts' initial task is always to interpret the
     words of the statute as Congress has enacted them. [citation removed] Accordingly, in the
26   absence of ambiguity in the plain language of the statute, the courts need look no further for
     interpretive aids. [citation removed].  Moreover, the need for legislative history is particularly
27   low when the courts have applied a consistent interpretation to the statute in question. [citation
     removed]."  *Id*. at 1177.  Here, Defendant attempts to claim that the reasoning of *Berry* (issued in
28   the immediate months following the passage of CAFA) has changed the relevant analysis of *In
     Re Ford*, which is simply incorrect as demonstrated by the litany of cases cited herein.

1  regard.

2       The Ninth Circuit Court of Appeals held (in both *In re Ford* and *Snow v. Ford Motor Co.*,

3  561 F.2d 787, 790 (9th Cir. 1977)) that "[w]e have specifically declined to extend the 'either

4  viewpoint rule' to class action suits... regardless of whether the requested class has been

5  certified." *In re Ford,* 264 F.3d at 958. As such, Defendant is incorrect in its assertion (in this

6  class action case) that the amount in controversy in this proceeding exceeds $5,000,000 and that

7  this matter is properly before this Court. (Opposition, pages 7-9).

8       The policy considerations underlying *In re Ford* are applicable to this case as well. In

9  this case, each putative class member purchased Defendant's disposable lighters individually,

10  not as a group. This case does not involve a common fund or a joint interest among purchasers

11  of Defendant's disposable lighters; rather, it involves a collection of individual claims based on

12  individual consumers' purchasing decisions. Because the putative class members in this case do

13  not in any sense possess joint ownership of, or an undivided interest in a common *res*, their

14  claims are separate and distinct. As such, Defendant is not permitted to aggregate its costs of

15  compliance for purposes of this CAFA analysis.

16  **III.**   **CONCLUSION**

17       In conclusion, Defendant fails to satisfy its high burden of proof pursuant to a CAFA

18  analysis. As such, Plaintiff respectfully submits that this Court has no subject matter jurisdiction

19  over this matter and that this case should be remanded back to state court.

20  Dated: February 25, 2008          Respectfully submitted,

21                      DEL MAR LAW GROUP, LLP

22

23                by s/John H. Donboli_____

24                 JOHN H. DONBOLI
               E-mail: jdonboli@delmarlawgroup.com

25                 JL SEAN SLATTERY
               E-mail: sslattery@delmarlawgroup.com

26                 Attorneys for Plaintiff DONNA R. NELSON, an
               individual and on behalf of all others similarly

27                 situated

28