KEVIN W. ALEXANDER (SBN 175204)
RICHARD R. SPIRRA (SBN 106361)
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

MANUEL S. SALDANA (SBN 137060)
GORDON & REES LLP
633 W. 5th Street, Ste. 4900
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendant
BIC USA, INC.

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA R. NELSON, an individual and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>BIC USA, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 3:07-cv-2367 LAB RBB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BIC USA, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: September 8, 2008<br>Time: 11:15 a.m.<br>Courtroom: 9<br>Judge: Hon. Larry A. Burns |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Table of Contents


Page

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 3

I. The Claim Alleging BIC Violated California Business And Professions Code Section 17533.7 Must Be Dismissed Because That Statute Is Preempted By Federal Law. .......... 3

A. The Text and Objective of 15 U.S.C. § 45a .......... 4

B. The FTC Rule/Standard .......... 6

C. Interpretation of California Business and Professions Code Section 17533.7. .......... 8

D. California Business and Professions Code Section 17533.7 Conflicts With, and Impedes the Objective of, 15 U.S.C. § 45a. .......... 9

II. The Claims Alleging BIC Violated California Civil Code §§ 17200 et. seq. and California Business & Professions Code §§ 1770(a)(4) and (9) Must Be Dismissed Because Those Statutes Are Also Preempted. .......... 12

CONCLUSION .......... 15


Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

Table of Authorities

Page

**Cases**

*Benson v. Kwikset Corp.*, 152 Cal.App.4th 1254 (2007) ........ 8, 9

*Bic Pen Corporation v. Carter*, 251 S.W.3d 500 (Tex. 2008) ........ 11

*Dowhal v. SmithKline Beecham Consumer Healthcare*, 32 Cal.4th 910 (2004) ........ 4

*Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) ........ 4

*Frith v. BIC Corp.*, 863 So.2d 960 (Miss. 2004) ........ 11

*Hillsborough County, Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707 (1985) ........ 4

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ........ 4

*Jones v. Rath Packing Co.* 430 U.S. 519 (1977) ........ 4

*Maryland v. Louisiana*, 451 U.S. 725 (1981) ........ 4, 12

**Statutes**

15 U.S.C. section 45(a)(1) ........ 4

15 U.S.C. section 45a ........ 1, 2, 3, 4, 5, 9, 10, 12, 13, 14, 15

California Business and Professions Code section 17533.71, 2, 3, 4, 8, 9, 10, 12, 13

California Business and Professions Code sections 17200 *et seq.* ..1, 2, 3, 12, 13, 14

California Civil Code section 1770(a)(4) ........ 1, 2, 3, 12, 13, 14

California Civil Code section 1770(a)(9) ........ 1, 2, 3, 12, 13, 14

**Other Authorities**

United States Constitution, Article VI, clause 2 ........ 3

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This case is one of a series of cases filed by the same law firm against companies that have allegedly violated California Business and Professions Code section 17533.7. That statute provides that it is unlawful "to sell or offer for sale. . . merchandise on which . . . there appears the words `Made in U.S.A.' . . . or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

The Complaint alleges that BIC USA, Inc. ("BIC") has violated the statute by placing the "Made in U.S.A." designation on disposable lighters that allegedly contain some components that are manufactured outside of the United States. The Complaint also alleges that BIC's use of the designation is an unfair and deceptive business practice in violation of Cal. Bus. & Prof. Code sections 17200 *et seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) because the designation is misleading and violates Cal. Bus. & Prof. Code section 17533.7. The Complaint alleges the claims should be accorded class action treatment on behalf of all consumers who purchased the BIC disposable lighters in California.

BIC denies that it violated any of these state statutes, and further denies that plaintiff or any putative class member was deceived or injured by BIC's use of the "Made in U.S.A." designation. However, even if the factual allegations in the Complaint were true, the claims for violating these state statutes must be dismissed because the federal law governing use of the "Made in U.S.A." designation preempts Cal. Bus. & Prof. Code section 17533.7, and preempts Cal. Bus. & Prof. Code sections 17200 *et. seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) to the extent that they permit the imposition of liability or a finding of unlawful conduct based on the use of the "Made in U.S.A." designation in a manner permitted by the applicable federal law.

A state statute is preempted if it conflicts with, or impedes the objective of, federal law. Section 17533.7 does precisely that. In 15 U.S.C. section 45a,

Congress expressly provided that the use of the "Made in U.S.A." designation *shall be* consistent with decisions and orders of the Federal Trade Commission ("FTC") concerning the appropriate percentage of imported components that may be included in a product to which that designation is applied. Cal. Bus. & Prof. Code section 17533.7 – as it has recently been interpreted by the California Court of Appeal – is inconsistent with the rules and standard the FTC has articulated, and it conflicts with, and impedes the purpose of, section 45a.

Section 45a and the standard adopted by the FTC permit use of the "Made in U.S.A" designation if only a minimal percentage of a product's parts are manufactured in a foreign country. The FTC concluded that: (1) this rule reflected consumers' understanding that the "Made in U.S.A." designation meant *most,* rather than literally *all,* of a product's parts were made in the United States; and (2) section 45a's objective of accurately identifying those products that preserve jobs for American workers would be best served by permitting the use of the "Made in U.S.A." designation on products that contained only a minimal percentage of foreign made components. (See "*Made in USA" and Other U.S. Origin Claims* in Federal Register vol. 62, no. 231, part III, pages 63756-63771 (Dec.2, 1997), a copy of which is attached as Exhibit "A" to BIC's Notice of Lodgment, filed herewith.)

Section 17533.7, on the other hand, has recently been interpreted by the California Court of Appeal as making it unlawful to affix the "Made in U.S.A." designation on a product if even a single part is manufactured in a foreign country, i.e., the Court found the state law prohibits manufacturers from using the "Made in U.S.A." designation in a manner that the FTC has determined is lawful and promotes section 45a's objective. Therefore, section 17533.7 is preempted by section 45a.

Cal. Bus. & Prof. Code sections 17200 *et. seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) do not expressly make it unlawful to use the "Made in

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

U.S.A." designation on a product that contains a minimal amount of foreign made components, but those statutes leave open the possibility that such a use might be deemed unlawful or a deceptive trade practice. The FTC, however, has determined that such a use is neither deceptive nor unlawful. Therefore, to the extent those two state statutes permit a finding that use of the "Made in U.S.A." designation in a manner that complies with section 45a is unlawful or a deceptive trade practice, they are also preempted because they conflict with, and impede the objective of section 45a.

## STATEMENT OF FACTS

The First Amended Complaint (hereinafter "Complaint") asserts three purported causes of action for: (1) violation of Cal. Bus. & Prof. Code section 17533.7 (Complaint, pp. 15-16); (2) violation of Cal. Bus. & Prof. Code sections 17200 *et. seq.* (California's unfair competition law) (Complaint, pp. 11-17); and (3) violation of Cal. Civ. Code sections 1770(a)(4) and (9) (which provide that using deceptive designations of origin and not selling goods as advertised are "unfair or deceptive practices") (Complaint, pp. 10-11).

Plaintiff Donna Nelson (hereinafter "Nelson") alleges that BIC has violated, and continues to violate, these three California statutes by affixing the designation "Made in U.S.A." on BIC disposable lighters that contain some components that are allegedly manufactured outside of the United States. (Complaint, ¶¶ 1, 10-38, 58, 65-67 and 78.)

## ARGUMENT

### I. <u>THE CLAIM ALLEGING BIC VIOLATED CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17533.7 MUST BE DISMISSED BECAUSE THAT STATUTE IS PREEMPTED BY FEDERAL LAW.</u>

Article VI, clause 2 of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." State law that

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

Preemption of state law by federal law is found under three circumstances: (1) express preemption, wherein Congress defines explicitly the extent to which its enactments preempt state law; (2) field preemption, wherein state law is pre-empted where it regulates conduct in a field that Congress intended the federal government to occupy exclusively; and (3) conflict preemption, wherein state law is pre-empted to the extent it actually conflicts with federal law. *Jones v. Rath Packing Co.* 430 U.S. 519, 525 (1977).

Conflict preemption does not require a direct contradiction between state and federal law. The state law is also preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Those purposes and objectives can be gleaned from letters, comments and statements of the federal agency promulgating the standards. *Dowhal v. SmithKline Beecham Consumer Healthcare*, 32 Cal.4th 910, 927 (2004).[1]

The analysis set forth below establishes that Cal. Bus. & Prof. Code section 17533.7 both conflicts with, and impedes the objective of, 15 U.S.C. section 45a. Therefore, the federal law preempts section 17533.7, and the state statute is without effect.

### A. The Text and Objective of 15 U.S.C. § 45a

15 U.S.C. section 45a is a subsection of the Federal Trade Commission Act ("FTCA"). The FTCA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. section 45(a)(1).

Section 45a specifically addresses the use of the designation "Made in the

[1] "State laws can be pre-empted by federal regulations as well as by federal statutes." *Hillsborough County, Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 713 (1985). "Federal regulations have no less pre-emptive effect than federal statutes." *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153 (1982).

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

U.S.A." and similar phrases denoting a product has a domestic origin. Section 45a was enacted in 1994 because Congress concluded that specific rules and regulations governing the use of the "Made in the U.S.A." designation were needed to ensure that consumers receive accurate information concerning which products are manufactured in this country and, therefore, preserve jobs for American workers. (160 Cong. Rec. H. 6209-6210, July 26,1994.)[2] The bill's sponsor explained that the legislation "... deals with American jobs, and these fraudulent labels that are being placed on some imports that are helping to wreck American jobs."[3] Section 45a provides in pertinent part:

> To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a "Made in the U.S.A." or "Made in America" label, or the equivalent thereof, in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title. This section only applies to such labels. Nothing in this section shall preclude the application of other provisions of law relating to labeling. The Commission may periodically consider an appropriate percentage of imported components which may be included in the product and still be reasonably consistent with such decisions and orders.

The last sentence of this portion of section 45a clearly indicates that Congress believed it was appropriate to use the "Made in U.S.A." designation even though some portion of a product's components were imported. Congress expressly delegated to the FTC the task of determining what percentage of imported components could properly be included in a product to which the "Made in U.S.A." designation is applied. Congress also expressly provided in section 45a that use of the designation "*shall be* consistent with" the FTC's determinations.

---

[2] A copy of the Congressional testimony concerning the need for the legislation is attached as Exhibit "B" to BIC's Notice Of Lodgment, filed herewith.

[3] Testimony of U.S. Representative James A. Traficant before the House of Representatives on July 26, 1994. (160 Cong. Rec. H. 6209.)

### B. The FTC Rule/Standard

Pursuant to this delegation of power, the FTC conducted a comprehensive review to determine what percentage of imported components could appropriately be included in a product to which the "Made in U.S.A." designation was affixed. (Exhibit "A" to BIC's Notice of Lodgment, at pp. 63765-63771.) This review included an analysis of several studies of what consumers understood the phrase "Made in U.S.A." to mean. Those studies established that most consumers understood and accepted that, when a product was labeled "Made in U.S.A.," *most* of its components were made in this country, but a small percentage of the product's components could be imported. *Id.* at pp. 63763-63764. Conversely, very few consumers understood or expected that the "Made in U.S.A." designation meant literally all of the product's components were made in the United States. *Id.* at p. 63764. Therefore, the FTC published proposed guidelines that, if adopted, would have permitted use of the "Made in U.S.A." designation if "*substantially all*" of a product's components were manufactured in this country, and the product was last transformed in the United States. *Id.* at p. 63756. Under this proposed standard, the designation could have been applied to products that had no more than 25% of their components imported from outside of the United States. *Id.* at p. 63756.[4]

In response to the proposed guidelines, the FTC received comments from thousands of consumers, consumer advocates, businesses and government officials. *Id,* at pp. 63757-63758. These comments reflected various opinions concerning the percentage of imported components that should be allowed in a product labeled "Made in U.S.A." in order to accurately identify and promote the sale of products that employ manufacturing processes that preserve jobs in this country. *Id.* at pp.

[4] Prior to conducting its review of these consumer surveys, the FTC had permitted the "Made in U.S.A." designation to be used only on products that were *"all or virtually all"* made in the United States. *Id.* at p. 63756.

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

63758-63761.

Those comments reflected the need for a delicate balancing by the FTC. If the permissible percentage of foreign made parts was too high, the designation would be misleading, and could be used to promote the sale of products that have a substantial percentage of their manufacturing process performed by foreign workers and, therefore, take jobs from U.S. workers. Conversely, if the permissible percentage of imported components was too low, or no imported components at all were allowed, the rule would prevent the use of the "Made in U.S.A." designation to accurately identify and promote sales of products that are manufactured almost entirely by workers in this country and, therefore, preserve jobs for U.S. workers. *Id.* at pp. 63758-63761.

The task delegated by Congress to the FTC was to consider the factors and competing interests addressed in these comments and determine a percentage or standard that was neither too high nor too low. The FTC's detailed discussion and analysis of the comments and the balancing of competing interests required to accomplish that task is set forth at pages 63756-63771 of the FTC report. (Exhibit "A" to BIC's Notice of Lodgment.)

The FTC ultimately decided manufacturers should be permitted to use the "Made in U.S.A." label on products that are "*all or virtually all*" made in the United States. *Id.* at pp. 63757, 63764-63765. The FTC stated that this meant the designation could lawfully be applied to a product that contained a *de minimis* or negligible amount of foreign content., i.e, not all of the product's parts had to be manufactured in this country. *Id.* at p. 63765. The FTC determined that this rule was consistent with consumers' understanding of the term "Made in U.S.A.," i.e., the designation would not be misleading when applied to a product that contained a minimal percentage of foreign made components, provided that *virtually all* of the product's parts were made in this country. *Id.* at p. 63765. For example, the FTC publication entitled *Complying with the Made In the USA Standard* states that use

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

of the "Made in the U.S.A." designation on propane barbecue grills that are assembled at a plant in Nevada and have knobs and tubing that are imported from Mexico would likely meet the *all or virtually all* standard, and not be deemed deceptive, because those foreign components make up a negligible portion of the product's total manufacturing costs, and are insignificant parts of the final product. (Page 2 of this FTC publication, a copy of which is attached as Exhibit "C" to BIC's Notice of Lodgment, filed herewith.)

The FTC noted that the amount of foreign components that would be permitted would vary on a product by product basis, and it articulated several factors that would be taken into consideration in determining how much foreign content or processing was permissible. (Exhibit "A" to BIC's Notice of Lodgment, at pp. 63765-63766.)

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

**C. Interpretation of California Business and Professions Code Section 17533.7.**

Section 17533.7 of the California Business and Professions Code is a subsection of California's false advertising act. Section 17533.7 provides:

> "It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words 'Made in U.S.A.,' 'Made in America,' 'U.S.A.,' or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States."

The California Court of Appeal recently interpreted section 17533.7 as prohibiting the use of the "Made in U.S.A." designation if even a single part of a product is made, produced or manufactured outside of the country. *Benson v. Kwikset Corp.*, 152 Cal.App.4th 1254, 1272-1274 (2007).

The court in *Benson* acknowledged that it was concerned that such a strict standard would have an adverse impact on trade, and create a potential for abuse of

the state's unfair competition laws because, as the dissenting justice pointed out, under this literal interpretation of the statute, the manufacturer of an aircraft carrier built by U.S. workers in Newport News Virginia could be found liable for stating the carrier was "Made in the U.S.A." if even a single television monitor on the ship were made in Japan. *Benson, supra,* 152 Cal.App.4th at 1274, 1284. In fact, the court stated that it would rewrite the statute if it could. *Id.* at 1274.

This lawsuit against BIC is the very manifestation of abuse of the unfair competition laws the court in *Benson* feared. This concern and potential for abuse can be alleviated by finding that the California statute is preempted by the federal law and the FTC standard permitting use of the "Made in U.S.A." designation on products that contain only a minimal percentage of foreign made components.

**D. California Business and Professions Code Section 17533.7 Conflicts With, and Impedes the Objective of, 15 U.S.C. § 45a.**

The conflict between section 17533.7 and 15 U.S.C. section 45a is patent. The two laws apply two different standards or rules.

Section 45a provides that use of the "Made in U.S.A." designation *shall be* consistent with the FTC's findings concerning the appropriate percentage of foreign components that should be permitted in products designated as "Made in U.S.A." The FTC adopted a standard that expressly *permits* the use of the "Made in U.S.A. designation on products that have a minimal amount of foreign manufactured parts as long as *"virtually all"* of the product's parts were made in the United States. (Exhibit "A" to BIC's Notice of Lodgment, at pp. 63756, 63766). According to the California Court of Appeal, section 17533.7 permits the use of the "Made in U.S.A." designation only on products that have literally no foreign made parts at all; it prohibits the use of the designation on products that have even one part that is foreign made. *Benson, supra,* 152 Cal.App.4th at 1274.

Section 17533.7 also impedes the objective of section 45a. The objective of section 45a is to ensure the "Made in U.S.A." designation accurately identifies

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

those products that have most of the manufacturing process performed in this country and, thereby, preserve jobs for U.S. workers. In section 45a, Congress expressly gave the FTC a mandate to determine the percentage of foreign components that may be contained in a product to best accomplish section 45a's objective.

After conducting the comprehensive analysis described in section I(B) above, the FTC concluded that section 45a's objective is best served by permitting the use of the "Made in U.S.A." designation on products that contain a minimal percentage of foreign components, as long as "virtually all" of their parts are made in this country. In light of this determination by the FTC, a rule that says the designation *cannot* be used to promote the sale of products that have virtually all of their parts made by workers in this country and contain only a minimal percentage of foreign made parts, as section 17533.7 has been interpreted, clearly impedes section 45a's objective. Such a rule prohibits manufacturers from using the "Made in U.S.A." designation in a manner the FTC determined would best and most accurately identify and promote the sale of products that have manufacturing processes that preserve jobs for American workers.

As noted previously, the FTC's determination required a delicate balancing. If the permissible percentage of imported parts was too high, the rule would be misleading and would allow the designation to be used to promote the sale of products that have a substantial percentage of their manufacturing process performed by foreign workers. Conversely, if the permissible percentage of imported components was too low, or no imported components at all were allowed, the rule would prevent the use of the "Made in U.S.A." designation to accurately identify and promote sales of products that were manufactured almost entirely by workers in this country and, therefore, preserve jobs for U.S. workers.

The Congressional mandate for the FTC to undertake this type of balancing and determine what percentage of imported parts is too high and what percentage

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

is too low is what distinguishes this federal law from laws in which Congress directs an agency to set minimum standards products must meet, but leaves open to the states the option to set stricter standards. The analysis of the court in a similar situation, in *Frith v. BIC Corp.,* 863 So.2d 960 (Miss. 2004), is applicable here.

In *Frith,* the issue was whether federal child safety regulations governing the design of disposable lighters preempted more stringent state regulations. The plaintiffs argued that the federal safety standard created a minimum standard, and that states were not prohibited from establishing a more stringent child-resistancy standard. The Mississippi Supreme Court rejected this argument, finding the record "reveal[ed] a genuine effort by Congress and federal regulators to *reach a balance* by sanctioning child-resistant lighters not too difficult for adult operation. A more stringent standard would no doubt frustrate the objective of the disposable lighter regulations." *Frith, supra,* 863 So.2d at 967. "The end result would be that a more stringent state standard would stand as an obstacle to the accomplishment of the federal objective of producing for the adult consumer a usable lighter which was yet as child-resistant as feasible for children . . . ." *Id.*; *See also, Bic Pen Corporation v. Carter,* 251 S.W.3d 500, 509 (Tex. 2008) (product defect claims impliedly preempted and conflict with federal regulatory scheme).

The same reasoning is applicable here. The FTC was not just tasked with determining a minimum percentage of American made parts a product must contain in order to use the "Made in U.S.A." designation. Rather, Congress expressly delegated to the FTC the task of determining the optimal or "appropriate" percentage of components that a product could contain and still use the designation. The FTC was expressly directed to determine what percentage of foreign made parts was too little, and what percentage was too great, to accurately convey to consumers whether a product's manufacturing processes preserved jobs for American workers. Congress expressly stated that use of the "Made in U.S.A." designation *shall be* consistent with the FTC's determinations. The fact that this

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

type of balancing was required indicates that Congress did not intend to leave open to the states the option of setting stricter standards.

Indeed, BIC is not aware of any state other than California that has attempted to impose such limits on the use of the "Made in U.S.A." designation. Obviously, if each state were allowed to individually determine what percentage of foreign parts could be contained in products designated or advertised as "Made in U.S.A.," the use of the designation would be more confusing than enlightening, especially considering the number of products that are advertised and sold on a nationwide basis. The designation could mean something different in every state, and advertising or packaging that is deemed to be helpful and *not* misleading to residents of most states could be deemed to be misleading to residents of some other states.

Because the Court of Appeal has interpreted section 17533.7 as prohibiting the use of the "Made in U.S.A." designation on products that contain only a minimal amount of foreign made parts, and the FTC has determined that use of the designation on such products is permissible and will promote the objective of section 45a, § 17533.7 conflicts with and impedes the objective of section 45a. Therefore, section 17533.7 is preempted, and the causes of action (particularly the third cause of action) alleging BIC violated that state statute must be dismissed because a state statute that is preempted by federal law is without effect. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).

## II. THE CLAIMS ALLEGING BIC VIOLATED CALIFORNIA CIVIL CODE §§ 17200 *ET. SEQ.* AND CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 1770(A)(4) AND (9) MUST BE DISMISSED BECAUSE THOSE STATUTES ARE ALSO PREEMPTED.

The first and second causes of action in the Complaint in this case are based on the allegation that BIC's use of the "Made in U.S.A." designation is an unfair, fraudulent and deceptive business practice in violation of Cal. Bus. & Prof. Code sections 17200 *et. seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) because

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

BIC's use of the "Made in U.S.A." designation is inaccurate or misleading. The second cause of action also alleges that BIC's use of the "Made in U.S.A." designation is an "unlawful" practice in violation of Cal. Bus. & Prof. Code sections 17200 *et. seq.* because BIC's conduct violates Bus. & Prof. Code section 17533.7.

If section 17533.7 is preempted, then the claim that BIC's conduct is an unlawful practice because it is a violation of section 17533.7 clearly has no merit, and must be dismissed.

The claims that BIC violated Cal. Bus. & Prof. Code sections 17200 *et. seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) must also be dismissed because both of those state statutes are preempted by section 45a to the extent that they conflict with and impede the objectives of section 45a.

Cal. Bus. & Prof. Code sections 17200 *et. seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) do not expressly make it unlawful to use the "Made in U.S.A." designation on a product that contains a minimal amount of foreign made components, but those statutes leave open the possibility that such a use might be deemed unlawful or a deceptive trade practice as those terms are defined in those statutes. Cal. Bus. & Prof. Code sections 17200 *et. seq.* broadly extend potential liability to "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Civ. Code sections 1770(a)(4) and (9) provide that using deceptive designations of origin and not selling goods as advertised are "unfair or deceptive practices."

Neither Cal. Bus. & Prof. Code sections 17200 *et. seq.* nor Cal. Civ. Code sections 1770(a)(4) or (9) limit the imposition of liability for an allegedly misleading use of the "Made in U.S.A." designation to cases in which the defendant has violated 15 U.S.C. § 45a or the FTC standard. Neither of these state statutes provides that a court is precluded from finding that a defendant who used the "Made in U.S.A." designation in the manner permitted by the FTC had

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

engaged in an unlawful, deceptive or fraudulent trade practice. It is certainly conceivable that a court applying those state statutes might find the defendant had engaged in unlawful, fraudulent or deceptive trade practices even if the defendant's use of the designation complied with section 45a and the FTC rule.

The FTC, however, has determined that use of the "Made in U.S.A." designation on products containing a minimal percentage of foreign components is not misleading, deceptive or unlawful. The FTC standard and rule were promulgated precisely because the FTC, pursuant to the express mandate of Congress in section 45a, determined that consumers understand that the "Made in U.S.A." designation means *virtually all* of the product's parts are manufactured in this country, and that some minimal percentage of the product's parts may be manufactured in another country.

Obviously, a state statute that permits the court to find that use of the "Made in U.S.A." designation in a manner permitted by section 45a and the FTC is unlawful or deceptive, or permits liability to be imposed for such a use, conflicts with, and impedes the objective of, section 45a for the same reasons discussed in the preceding section. Therefore, to the extent that Cal. Bus. & Prof. Code sections 17200 *et. seq.* and Cal. Civ. Code sections 1770(a)(4) and (9) permit a finding that it is unlawful to use the "Made in U.S.A." designation on products on which the label is permitted by the FTC, or allow liability to be imposed for such a use, those statutes are also preempted by section 45a.

BIC's use of the "Made in U.S.A." designation can only be found to be unlawful, fraudulent or deceptive if it is found to have violated the FTC rule/standard. There is no need or reason to adjudicate whether BIC's use of the designation is "misleading" or "deceptive" as those terms are defined under Cal. Bus. & Prof. Code sections 17200 *et. seq.* or Cal. Civ. Code sections 1770(a)(4) and (9). California standards or laws that are inconsistent with the FTC rule and allow liability to be imposed for uses of the designation that are permitted by the

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

FTC are preempted and of no effect.

The Complaint, however, does not allege that BIC has violated section 45a or the FTC standard – presumably because plaintiff recognizes it is much more difficult to prove a violation of section 45a and the federal standard. Therefore, BIC is entitled to dismissal of both the first and second causes of action because they seek to impose liability based on state statutes that conflict with, and are preempted by, federal law.

## CONCLUSION

For the reasons set forth above, all of the causes of action asserted in the First Amended Complaint should be dismissed with prejudice.

Dated: July 2, 2008

GORDON & REES LLP

By: ______________________
Kevin W. Alexander
Richard R. Spirra
Manuel S. Saldana
Attorneys for Defendant BIC USA, INC.

Gordon & Rees LLP
101 W. Broadway
Suite 2000
San Diego, CA 92101

KEVIN ALEXANDER (SBN 175204)
email: kalexander@gordonrees.com
RICHARD R. SPIRRA (SBN 106361)
email: rspirra@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

MANUEL SALDANA (SBN 137060)
email: msaldana@gordonrees.com
GORDON & REES LLP
633 W. 5th Street, Ste. 4900
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470

Attorneys for Defendant
**BIC USA, INC.**

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONNA R. NELSON, an individual and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>BIC USA, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 3:07-CV-2367- LAB(RBB)<br><br>PROOF OF SERVICE |

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 101 W. Broadway, Suite 2000, San Diego, CA 92101. On July 2, 2008, I served the within document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

☐ **BY FACSIMILE, [Fed. Rule Civ. Proc. Rule 5(b)]** by sending a true copy from Gordon & Rees LLP's facsimile transmission telephone number (619) 696-7124 to the fax number(s) set forth below, or as stated on the attached service list. I am readily familiar with the firm's practice for sending facsimile transmissions, and know that in the ordinary course of Gordon & Rees LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Gordon & Rees LLP for transmission.

☒ **BY U.S. MAIL [Fed. Rule Civ. Proc. Rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **BY ELECTRONIC FILING**. I caused all of the pages of the above-entitled document(s) to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

**John H Donboli**
Del Mar Law Group, LLP
322 Eighth Street
Suite 101
Del Mar, CA 92014
Email: jdonboli@delmarlawgroup.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on July 2, 2008, at San Diego, California.

Carolina Mendieta